IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| **DANA LEWIS MCDONALDS, LLC,** | ) | CASE NO. 10-60002 |
| *et al.,* | ) | |
| | ) | JUDGE RUSS KENDIG |
| **Debtors.** | ) | |
| | ) | |

**FIRSTMERIT BANK, N.A.'S PRELIMINARY OBJECTION TO MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR ORDER APPROVING USE OF CASH COLLATERAL AND RELATED RELIEF**

FirstMerit Bank, N.A. ("FirstMerit"), by and through its counsel, respectfully sets forth its preliminary objection to the Motion of Dana Lewis McDonalds, LLC ("DLM"); Zanco Enterprises, Inc. ("Zanco"); and Cosh-Tusc Enterprises, Inc. ("Cosh-Tusc") (each a "Debtor" and collectively, the "Debtors") for Order Approving Use of Cash Collateral and Related Relief (the "Motion") for the following reasons.

**I.     FIRSTMERIT'S INTERESTS**

FirstMerit is the lender and/or secured party under various loan documents set forth below (the "Loan Documents") that are affected by the Motion. First, one or more Debtors and related parties have executed three promissory notes to FirstMerit (the "Three McDonald's Notes") that are secured by certain of the McDonald's Collateral, as such term is hereinafter defined. Second, two Debtors and related parties executed a $3.9 million promissory note to FirstMerit (the "$3.9 Million Note") secured primarily by collateral not owned by the Debtors. Third, a nondebtor affiliate of the Debtors executed a promissory note to FirstMerit (the "Anselco Note") that is secured by certain of the McDonald's Collateral. Fourth, two of the

Debtors executed guarantees in favor of FirstMerit (the "Debtor Guarantees"), whereby they unconditionally guaranteed all indebtedness to FirstMerit of the Debtors' principal, Dana J. Lewis ("Dana"). This Objection sometimes refers to FirstMerit's interest in all Debtor-owned collateral pledged in support of the Loan Documents as "FirstMerit's Interests."

### A. Three McDonald's Notes

#### 1. *Group Term Note*

Zanco, Cosh-Tusc, and Dana executed and delivered to FirstMerit a certain Promissory Note, dated March 31, 2005 in the original principal amount of $2,400,000.00 (as amended, the "Group Term Note," a copy of which is attached hereto as Exhibit A). As of December 30, 2009, there is due and owing to FirstMerit under the Group Term Note the principal amount of **$1,566,687.33** (not including late fees, interest, or attorneys' fees and expenses).

As security for the Group Term Note, Dana, Zanco, Cosh-Tusc, Anselco, Ltd. ("Anselco"), Joseph Ansel (released by subsequent amendment) and Amy Ansel executed and delivered to FirstMerit a certain Security Agreement, dated March 5, 2004 (as amended, the "Group Term Security Agreement," a copy of which is attached hereto as Exhibit B). The Group Term Security Agreement grants a security interest in favor of FirstMerit in all personal property, fixtures and accessions of Dana, Zanco, Cosh-Tusc, Anselco, and Amy Ansel used in connection with, generated by, resulting from, or in any way related to the operation of McDonald's Restaurants now owned or hereafter acquired and all proceeds, including all accounts, deposit accounts, inventory, equipment, fixtures, money, general intangibles, instruments, documents, chattel paper, letter of credit rights, commercial tort claims, securities, and all other investment property, supporting obligations and any other contract right or right to payment of money, insurance claims and proceeds and tort claims (the "Group Term Note Collateral").

2

10-60002-rk    Doc 25    FILED 01/04/10    ENTERED 01/04/10 22:53:46    Page 2 of 9

## 2. *DLM Note*

DLM executed and delivered to FirstMerit a certain Promissory Note, dated December 23, 2008, in the original principal amount of $1,525,000.00 (as amended, the "DLM Note," a copy of which is attached hereto as <u>Exhibit C</u>). As of December 30, 2009, there is due and owing to FirstMerit under the DLM Note the aggregate sum of **$694,737.97** (plus attorneys' fees and expenses) consisting of (a) unpaid principal in the amount of $682,641.65, (b) accrued and unpaid interest through December 30, 2009 in the amount of $3,174.32, with interest continuing to accrue after December 30, 2009 at the rate set forth in the DLM Note, and (c) late charges in the amount of $8,922.00.

As security for the DLM Note, DLM executed and delivered to FirstMerit a certain Commercial Security Agreement, dated December 23, 2008 (the "DLM Security Agreement," a copy of which is attached hereto as <u>Exhibit D</u>), which grants a security interest in favor of FirstMerit in all inventory, chattel paper, accounts, equipment and general intangibles of DLM (the "DLM Collateral").

## 3. *Zanco Note*

Zanco executed and delivered to FirstMerit a certain Promissory Note, dated March 26, 2007, in the original principal amount of $75,000.00 (as amended, the "Zanco Note," a copy of which is attached hereto as <u>Exhibit E</u>). As of December 30, 2009, there is due and owing to FirstMerit under the Zanco Note the aggregate sum of **$75,035.42** (plus attorneys' fees and expenses) consisting of (a) unpaid principal in the amount of $75,000.00, (b) accrued and unpaid interest through December 30, 2009 in the amount of $35.42, with interest continuing to accrue after December 30, 2009 at the rate set forth in the Zanco Note, and (c) late charges as set forth in the Zanco Note.

In order to secure the Zanco Note and all other obligations of Zanco to FirstMerit, Zanco executed and delivered to FirstMerit a certain Commercial Security Agreement, dated March 26, 2007 (the "Zanco Security Agreement," a copy of which is attached hereto as <u>Exhibit F</u>), which grants a security interest in favor of FirstMerit in all inventory, chattel paper, accounts, equipment, and general intangibles of Zanco (the "Zanco Collateral", and collectively with the Group Term Note Collateral and the DLM Collateral, the "McDonald's Collateral").

**B.     $3.9 Million Note**

Zanco, Cosh-Tusc, Anselco, Dana, Joseph Ansel (released by subsequent amendment) and Amy Ansel executed and delivered to FirstMerit the $3.9 Million Note, dated March 5, 2004, in the original principal amount $3,900,000.00. A copy of the $3.9 Million Note is attached hereto as <u>Exhibit G</u>. As of December 30, 2009, there is due and owing to FirstMerit under the $3.9 Million Note the aggregate sum of $2,762,137.00 (plus attorneys' fees and expenses) consisting of (a) unpaid principal in the amount of $2,733,904.00, (b) accrued and unpaid interest through December 30, 2009 in the amount of $25,630.35, with interest continuing to accrue after December 30, 2009 at the rate set forth in the $3.9 Million Note, and (c) late charges in the amount of $2,602.79.

**C.     Anselco Note**

Dana, Joseph Ansel (released by subsequent amendment), Amy Ansel and Anselco executed and delivered to FirstMerit the Anselco Note, dated March 31, 2005, in the original principal amount of $950,000.00. A copy of the Anselco Note is attached hereto as <u>Exhibit H</u>. As of December 30, 2009, there is due and owing to FirstMerit under the Anselco Note the principal amount of **$620,147.07** (not including late fees, interest, and attorneys' fees and expenses).

The Anselco Note is secured by the Group Term Security Agreement.

4

### D. Debtor Guarantees

Zanco executed and delivered a certain Commercial Guaranty in favor of FirstMerit, dated June 3, 2004 (the "Zanco Guaranty," a copy of which is attached hereto as <u>Exhibit I</u>), which guarantees the performance and payment of all obligations of Dana to FirstMerit.

Cosh-Tusc executed and delivered a certain Commercial Guaranty in favor of FirstMerit, dated June 3, 2004 (the "Cosh-Tusc Guaranty," a copy of which is attached hereto as <u>Exhibit J</u>), which guarantees the performance and payment of all obligations of Dana to FirstMerit.

In addition to the obligations related to the five promissory notes set forth above, Dana's obligations to FirstMerit exceed $13 million as of December 30, 2009.

### E. Perfection of Security Interests

In order to perfect the security interests granted by the foregoing security agreements, FirstMerit filed a variety of Uniform Commercial Code financing statements and fixture filings, copies of which are attached hereto as <u>Exhibit K</u>.

### F. Liability with respect to Indebtedness primarily secured by the McDonald's Collateral

The Debtors' cumulative debt to FirstMerit with respect to Group Term Note, DLM Note, Zanco Note, and Anselco Note is **$2,956,607.79**, not including late fees, interest, and attorneys' fees and expenses (the "Secured Primary Obligation"). The Secured Primary Obligation is secured by the McDonald's Collateral, which consists of all personal property owned by Zanco (including the McDonald's franchise in Coshocton), DLM (including the McDonald's franchises in Newcomerstown and Cadiz) and Cosh-Tusc (including the McDonald's franchise in Sugarcreek).

## II. LAW AND ARGUMENT

As a general principle, FirstMerit does not object to the Debtors' use of cash collateral, on a reasonable basis, to continue their business in the ordinary course so long as FirstMerit's

interests are adequately protected. Here, however, FirstMerit objects to the Motion because FirstMerit's Interests are not adequately protected. The Motion can be granted only to the extent that FirstMerit's proposed treatment is altered to assure FirstMerit's adequate protection.

Under Section 363 of the Bankruptcy Code, a debtor may not use, sell, or lease cash collateral unless: (1) each entity with an interest in the cash collateral consents; or (2) the court, after notice and hearing, authorizes the debtor's use of cash collateral. 11 U.S.C. § 363(c)(2). At the request of an interested, non-consenting creditor, the Court must condition a debtor's use of cash collateral upon its provision of "adequate protection." 11 U.S.C. § 363(e).

The Debtors have not borne their burden of showing that FirstMerit is adequately protected. While Debtors are correct that Bankruptcy Rule 4001 authorizes a court to authorize the use of cash collateral on an interim basis, nothing in Rule 4001 alters a debtor's burden of showing that creditors affected by a motion to authorize use of cash collateral are adequately protected. See 11 U.S.C. § 363(p)(1) ("In any hearing under this section—(1) the trustee has the burden of proof on the issue of adequate protection"); see also In re Goode, 235 B.R. 584, 589 (Bankr. E.D. Tex. 1999) (holding that adequate protection provided to the creditor "must not be illusory and, particularly in the context of the use of cash collateral, must be of the most indubitable equivalence") (citing In re Waste Conversion Techs., Inc., 205 B.R. 1004, 1007 (D. Conn. 1997)). Instead, Rule 4001 actually **adds** to the Debtors' burden, by limiting the amount of cash collateral the Court can authorize Debtors to use to the amount "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2).

The Debtors have not borne their burden of demonstrating that FirstMerit will be adequately protected under the proposed interim cash collateral order.

6

First, the Debtors seem to assume that FirstMerit is undersecured, an assumption that appears to be premised on significant undervaluation of the Debtors' assets. The petitions assert that Debtors' assets are in the following ranges: $100,001 to $500,000 (Zanco); $0 to $50,000 (DLM); and $0 to $50,000 (Cosh-Tusc). These figures are inconsistent with a letter of intent (a copy of which is attached hereto as <u>Exhibit L</u>) from another McDonald's franchisee, offering to purchase DLM's and Cosh-Tusc's three McDonald's franchises (Newcomerstown, Cadiz and Sugarcreek) for a total of $3.7 million. And, extrapolating from the cash flows listed on the budget attached to the Motion, Zanco's McDonald's franchise (the Coshocton franchise) is likely substantially more valuable than the other Debtors'. <u>See</u> Motion Ex. A (estimating January product sales of $238,373 for Zanco franchise, $95,460 for Cosh-Tusc franchise, and $152,573 and $98,230 for DLM franchises). Even conservatively estimating that the Zanco franchise is worth the same as the average cost of the other three, the Debtors' assets would be worth a minimum of $4,933,333.33—nearly $2 million more than the Secured Primary Obligation. Far from demonstrating that FirstMerit is undersecured, the Debtors' assumptions of value, made without considering documents they themselves recently received, prove nothing other than the unreliability of those assumptions.

Second, the Motion asserts that replacement liens in estate property acquired postpetition will adequately protect FirstMerit's Interests. The Motion appears to propose that for every dollar of FirstMerit's cash collateral that the Debtors spend, FirstMerit will be granted a lien in a dollar that the Debtors obtained postpetition. <u>See</u> Motion at ¶ 17. But FirstMerit not only has an interest in its cash collateral; as an over-secured creditor, FirstMerit also has an equity cushion that would be eroded without adequate protection payments to FirstMerit. <u>See</u> <u>United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.</u>, 484 U.S. 365, 372 (1988). The

7

proposed replacement liens alone, therefore, would not adequately protect FirstMerit against diminution in its secured position.

### III. RESERVATION OF RIGHTS

Regarding the Debtors' request to use FirstMerit's cash collateral on an **interim** basis, FirstMerit and the Debtors have agreed in principle to terms of an interim cash collateral order that FirstMerit expects Debtors to present at the preliminary hearing scheduled for January 5, 2010. FirstMerit will continue to work with the Debtors to reach an agreed final order authorizing Debtors to use cash collateral. Should such efforts prove unsuccessful, however, FirstMerit reserves the right to supplement this Objection prior to the final hearing on the Motion.

Respectfully submitted,

/s/ Elia O. Woyt
Elia O. Woyt (0074109)
Katherine A. Albrecht (0083668)
VORYS, SATER, SEYMOUR AND PEASE LLP
106 South Main Street, Suite 1100
Akron, Ohio 44308
Telephone: (330) 208-1000
Facsimile: (330) 208-1001
eowoyt@vorys.com
kaalbrecht@vorys.com

Jesse Cook-Dubin (0081949)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street / P.O. Box 1008
Columbus, OH 43216-1008
Telephone: (614) 464-6498
Facsimile: (614) 719-4752
Email: jcookdubin@vorys.com

*Counsel for FirstMerit Bank, N.A.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 4, 2010 a true and accurate copy of the foregoing *Objection to Motion of Debtors and Debtors-in-Possession for Order Approving Use of Cash Collateral and Related Relief* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Elia O. Woyt
Elia O. Woyt